**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| MICHAEL DEWAYNE BOLDEN,<br>        Appellant, | DOCKET NUMBER<br>DC-844E-20-0846-I-1 |
| v. | |
| OFFICE OF PERSONNEL<br>    MANAGEMENT,<br>        Agency. | DATE:  December 28, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

A. Brian Henson, Decatur, Georgia, for the appellant.

Albert Pete Alston, Jr., and Moraima Alvarez, Washington, D.C., for the
    agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which
affirmed the final decision of the Office of Personnel Management (OPM)
denying his application for Federal Employees' Retirement System (FERS)
disability retirement.  For the reasons discussed below, we GRANT the

_____

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

appellant's petition for review, REVERSE the initial decision, and ORDER OPM to grant the appellant's disability retirement application.

## BACKGROUND

The appellant was a Police Officer with the Department of the Air Force Security Forces. Initial Appeal File (IAF), Tab 6 at 27, 32, 61. On March 2, 2020, he filed an application for disability retirement benefits under FERS, asserting shoulder, ankle, knee, and back injuries, as well as depression. *Id.* at 30-31. OPM denied his application in an initial decision and, after the appellant requested reconsideration, affirmed its finding in a final reconsideration decision. *Id.* at 5-9, 12-13, 16-21. The appellant appealed this decision to the Board. IAF, Tab 1. After the appellant withdrew his request for a hearing, IAF, Tab 14 at 4, the administrative judge affirmed OPM's final decision, IAF, Tab 24, Initial Decision (ID) at 1. The appellant has filed a petition for review, and OPM has responded. Petition for Review (PFR) File, Tabs 1, 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

To be eligible for a disability retirement annuity under FERS, an appellant must establish the following elements by preponderant evidence[2]: (1) he completed at least 18 months of creditable civilian service; (2) while employed in a position subject to FERS, he became disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or, if there is no such deficiency, the disabling medical condition is incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition is expected to continue for at least 1 year from the date that the application for disability retirement benefits was filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) the employee did not decline a reasonable offer of reassignment to a vacant position.

---

[2] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

*Chavez v. Office of Personnel Management*, 111 M.S.P.R. 69, ¶ 6 (2009). The administrative judge found that the appellant established the first element only. ID at 4-6. The parties do not challenge this finding on review, and we see no reason to disturb it.

The administrative judge improperly found that the appellant's preexisting conditions disqualified him from disability retirement; instead, we find that the appellant proved that his medical conditions were incompatible with either useful and efficient service or retention in the position.

The administrative judge found that the appellant's disabling conditions "long preceded" his employment with the Department of the Air Force, and thus, he did not become disabled while in a position subject to FERS. ID at 11-13. Because the administrative judge found the preexisting conditions were disqualifying, he did not address whether the appellant's conditions were incompatible with useful and efficient service or retention in the Police Officer position. The appellant on review argues that, although his conditions predated his employment, those conditions worsened during his employment in positions covered by FERS such that he became no longer capable of performing his duties. PFR File, Tab 1 at 5, 8-9. For the following reasons, we agree with the appellant.

> *The appellant's preexisting conditions do not disqualify him from disability retirement benefits.*

The date of the initial diagnosis or onset of a potentially disabling medical condition is not dispositive of whether an appellant became disabled while in a position subject to FERS. 5 C.F.R. § 844.103(a)(2). As the administrative judge noted in the initial decision, an appellant may be granted a disability annuity only if he was able to perform successfully at the time of entry into a position subject to FERS and became disabled as a result of the progression of the disease. ID at 13 (discussing *Johnston v. Office of Personnel Management*, 57 M.S.P.R. 590, 596 n.7 (1993).

The appellant's conditions, including his ankle and back pain and depression, date back to an injury sustained while he was in the military in 1998.

IAF, Tab 7 at 4, 162, Tab 19 at 4-5. In the initial decision, the administrative judge noted that the appellant served in a variety of appointments starting in April 2016, including term appointments, all of which were positions that were subject to FERS. ID at 4-5. It does not appear that the appellant's medical conditions were disabling in the 2016-2018 timeframe.[3] Indeed, the appellant's performance appraisal, which covered the time frame of April 1, 2017, to March 31, 2018, was fully successful. IAF, Tab 6 at 60-67.

> *The appellant proved that his disabling conditions were incompatible with useful and efficient service or retention in the Police Officer position.*

An appellant must also demonstrate that his disabling condition resulted in a deficiency in performance, conduct, or attendance, or, if there is no such deficiency, that the disabling medical condition is incompatible with either useful and efficient service or retention in the position.[4] *Chavez,* 111 M.S.P.R. 69, ¶ 6. An appellant can establish that his medical conditions were incompatible with useful and efficient service by showing the conditions were inconsistent with working in general, working in a particular line of work, or working in a particular type of setting. *Henderson v. Office of Personnel Management*, 117 M.S.P.R. 313, ¶ 16 (2012). A determination on eligibility for disability retirement should take into account all competent medical evidence, including

---

[3] To the contrary, the appellant's disability retirement application indicated that he became disabled in September 2019. IAF, Tab 6 at 30.

[4] There is no evidence that the appellant had a conduct or attendance deficiency. IAF, Tab 6 at 28. However, the record is inconsistent regarding whether the appellant had a performance deficiency. The supervisor's statement accompanying his disability retirement application, dated March 4, 2020, certified that the appellant's performance had become less than fully successful in September 2019 and noted that he was placed in an administrative function at this time. *Id.* at 27-28. Yet, the appellant's final performance appraisal—dated March 25, 2020, seemingly signed by the same supervisor, and covering the time period of April 1, 2019, to March 27, 2020—rated the appellant as fully successful overall, although he was not rated in certain performance elements. IAF, Tab 12 at 4-14. We need not resolve whether the appellant had a performance deficiency because, as set forth below, we find that his medical conditions were incompatible with useful and efficient service or retention in this Police Officer position.

both objective clinical findings and qualified medical opinions based on the applicant's symptoms. *Chavez*, 111 M.S.P.R. 69, ¶ 7. In addition, the determination should include consideration of the applicant's own subjective evidence of disability and any other evidence of the effect of his condition on his ability to perform in the position he last occupied. *Id.* An appellant's own subjective complaints of pain and inability to work must be seriously considered and are entitled to great weight, particularly when supported by competent medical evidence. *Selby v. Office of Personnel Management*, 102 M.S.P.R. 217, ¶ 15 (2006).

Among his duties as a Police Officer, the appellant "had full powers of apprehension and detention," he served as a dispatcher, and he had to perform the full range of base entry collection duties and ground defense functions. IAF, Tab 6 at 51-54. The physical demands of the position included "regular and recurring physical exertion such as running in pursuits or emergency responses, long periods of standing, walking, bending, stooping, reaching, crawling, and similar activities." *Id*. at 57. The appellant was required to respond to alarms and walk foot patrols in and around buildings as well as have the physical ability and strength to pursue and detain uncooperative suspects and to employ "infantry/ SWAT" small unit tactics involving firing and maneuvering with rapid advancing movement between defensive positions. *Id*. at 57-58.

As stated by the appellant in his declaration made under penalty of perjury and his disability retirement application, starting in approximately September 2019, his medical conditions rendered him unable to perform the duties required of him as a Police Officer.[5] IAF, Tab 6 at 30, Tab 19 at 4-5. He explained that his shoulder, back, knee, and ankle pain worsened to the point that he experienced significant pain throughout much of his body. IAF, Tab 19 at 4. He had shoulder surgery in October 2019 to alleviate some pain, but the symptoms persisted,

---

[5] The Board is not limited to a review of the record before OPM in adjudicating a disability retirement appeal. *Cook v. Office of Personnel Management*, 31 M.S.P.R. 683, 686 (1986).

despite being prescribed multiple medications. *Id.* Regarding his depression, he stated that he has difficulty concentrating and sleeping, fatigue, severe anxiety, panic attacks, and feelings of hopelessness. *Id.* He further stated that he experienced suicidal ideation at times, and he had attempted to drive his car into a tree on multiple occasions and had overdosed on his medications as recently as 2019. *Id.* Although he took various medications, they were not successful in eliminating his symptoms of depression. *Id.*

Specifically, he noted that, because of "worsening chronic pain," he could not perform in a physical conflict with a potential perpetrator or properly defend himself or others. *Id.* at 5. He further explained that he could not stand or run for extended periods of time, and he was prevented from being able to bend or lift any significant weight. *Id.* Moreover, his ability to properly use his firearm was compromised by his pain, which limited his ability to maintain prone or other firing postures. *Id.* He further asserted that his depression limited his ability to focus and concentrate on potential dangers, and his inability to recognize threats could harm agency personnel or property. *Id.* Furthermore, his depression caused fatigue and sleep difficulties, limiting his energy to respond to potential threats, and his anxiety and panic attacks could render him completely unable to respond at all. *Id.* He indicated that he had to request a light duty assignment to ensure his safety and the safety of others. *Id.*

The appellant's assertions are supported by the medical evidence. The evidence demonstrates that the appellant made numerous visits to health care providers in 2019 and 2020 for pain in his shoulders, back, and upper and lower limbs. *E.g.,* IAF, Tab 7 at 4-5, 27-28, 35-38, 48-49, 61-62, 79, 81-86, 91-93, 102-04, 121-23. The appellant reported that he had to take frequent breaks at work, he had difficulty walking and standing for extended periods of time, and the pain interfered with his sleep. *Id.* at 103-04, 122. In August 2019, his doctor noted a limited range of motion in the appellant's back and left ankle. *Id.* at 101. In September 2019, the same month his supervisor noted that his performance

became unacceptable, the appellant saw his doctor for increased left shoulder pain, stating that it was "worsening now and getting real weak" and that it hurt more with activity. *Id.* at 90. At this same time, the appellant was given a physical and he was placed on light duty which prohibited him from heavy lifting, patrolling, apprehending suspects, running, and prolonged standing and walking. IAF, Tab 23 at 28. He had trouble picking up his daughter, and the pain was worse with certain movements. *Id.* at 93. In November 2019, his doctor believed his shoulder pain was caused by a "full-thickness rotator cuff tear." *Id.* at 79. In January 2020, the appellant went to the emergency room for lower back pain and was referred to physical therapy. *Id.* at 48-49. He was instructed not to lift anything and to be on bed rest for 14 days. *Id.* at 49. The appellant was seen in February 2020 for a mental health examination to address his recurrent depression; the psychiatrist noted that his mood was "a little better" but he was still "in a major depressive episode." *Id.* at 4-5, 43-48. His doctor noted that the appellant's major depressive episode could "significantly impact [his] ability to focus, in addition to lowering energy level, motivation, reliability, and ability to optimally perform his job functions." *Id.* at 5, 47-48. From a non-psychiatric perspective, given his back and ankle pain, his doctor recommended no heavy lifting. *Id.* at 5, 47. In March 2020, the appellant again saw his doctor, noting that the medicine helped some, but "[does not] work when [the pain] gets bad" and does not work on his back. *Id.* at 33. His doctor noted a limited range of motion for his back, and that most discomfort occurred with bending forward and stretching. *Id.* at 34. The appellant rated his total pain at 6 out of 10, and he rated the pain's interference with his usual activity at 7 out of 10. *Id.* at 36. Later that month, the appellant was suicidal due to his considerable pain. *Id.* at 27-28. The appellant was prescribed numerous pain and anti-depressant medications throughout this time.

We find the appellant's medical documentation combined with his written declaration and supervisor's statement sufficiently demonstrate that his medical

conditions, including the shoulder, ankle, knee, and back injuries, and depression, are incompatible with working as a Police Officer. Indeed, an appellant "may prevail [in a disability retirement application] based on medical evidence that consists of a medical professional's conclusive diagnosis, even if based primarily, as here, on his/her analysis of the [appellant's] own descriptions of symptoms and other indicia of disability." *Vanieken-Ryals v. Office of Personnel Management*, 508 F.3d 1034, 1041 (Fed. Cir. 2007).

Moreover, an applicant for disability retirement benefits must establish the extent to which his disability can or cannot be controlled. *Doe v. Office of Personnel Management*, 109 M.S.P.R. 86, ¶ 20 (2008). In February 2020, the appellant's psychiatrist asserted that the appellant "is engaged in care here and compliant with treatment." IAF, Tab 7 at 4-5. Moreover, in March 2020, the appellant noted that he takes various medications, but they do not always work. *Id.* at 33. We find no evidence to suggest that the appellant's treatment was successful in returning him to a point where he was able to perform the duties of his Police Officer position. *Yoshimoto*, 109 M.S.P.R. 86, ¶ 20. We therefore find that the appellant proved by preponderant evidence that he is precluded from useful and efficient service or retention in his position.

<u>The appellant's conditions are expected to last for at least 1 year from the date he filed his disability retirement application.</u>

The administrative judge appeared to have found that the appellant failed to demonstrate that his conditions would last at least 1 year after his application for disability retirement benefits. ID at 12. In addressing the issue, the administrative judge merely noted that the appellant's psychiatrist failed to clearly state that the appellant's limitations would continue for at least 1 year. *Id*. The appellant challenges this finding on review, arguing that his conditions are chronic and can last for an indeterminable period. PFR File, Tab 1 at 6-7. We agree with the appellant.

Per the appellant's psychiatrist, the appellant's depression is recurrent. IAF, Tab 7 at 5. In February 2020, she noted that the appellant was "still in a major depressive episode that [was] starting to respond gradually to medication treatment." *Id.* Although she anticipated that he would continue to make improvements with time, with an ultimate goal of remission, patients with a diagnosis of recurrent depression are at risk of future depressive episodes. *Id.* She also recommended no heavy lifting because of the appellant's back and ankle pain, which appears to be a recommendation for an indefinite amount of time. *Id*. The medical evidence from March 2020, the same month in which he filed his disability retirement application, shows that the appellant had suffered from lower back pain for at least 2 years, which was described as chronic. *Id.* at 33.

Moreover, in his December 2020 declaration, made 9 months after his application for disability retirement, the appellant explained the then-current and recurring medical conditions from which he suffered. IAF, Tab 19 at 4-5. There, he explained the ongoing pain in his ankles, knees, shoulder, and back, the symptoms of his depression, and how these conditions precluded him from useful and efficient service or retention in this Police Officer position. We find this declaration, made 9 months into the 1-year time period, is strong evidence that the appellant's longstanding depression and chronic lower back pain and other conditions would continue for the full year after his application for disability retirement benefits. OPM asserts on review that the appellant failed to show that his conditions would last for at least 1 year, and it cites to the psychiatrist report, which discussed improvements to his depression over time. PFR File, Tab 3 at 12; IAF, Tab 4 at 4-5. This argument is not persuasive. The psychiatrist's discussion of the gradual improvement of his depressive symptoms and long-term recovery does not address the appellant's other physical conditions. Nor does it outweigh the appellant's statements made nearly 10 months later regarding his chronic pain and ongoing depression and the impact of these conditions on his daily life. IAF, Tab 19 at 4-5. Accordingly, we find that the evidence

sufficiently demonstrates that his conditions were expected to continue for at least 1 year after the date of his application for disability retirement benefits. *See Moran v. Office of Personnel Management*, 72 M.S.P.R. 138, 143 (1996) (finding an applicant for disability retirement under the Civil Service Retirement System (CSRS) established that the disability would last at least 1 year from the application date where he had already been unable to work for several months at the time of filing his application and remained unable to function for an extended period after his filing).[6]

The appellant's medical conditions could not reasonably be accommodated.

The administrative judge found that, based on the appellant's light duty assignment, accommodation of his conditions was possible and actually accomplished. ID at 11. The appellant argues on review that his placement on light duty was not a long-term accommodation because he was not performing all of the essential functions of the Police Officer position. PFR File, Tab 1 at 7. We agree with the appellant.

"Accommodation means a reasonable adjustment made to an employee's job or work environment that enables the employee to perform the duties of the position." 5 C.F.R. § 844.102. If there is an accommodation that enables the employee to perform the critical or essential duties of his position of record, the employee may not receive disability retirement. *Chavez*, 111 M.S.P.R. 69, ¶ 13.

Following a physical examination, the appellant was placed on light duty in a "temporary administrative function" starting on or around September 30, 2019.[7] IAF, Tab 6 at 28, Tab 23 at 28. In this light duty assignment, the appellant was restricted from heavy lifting, patrolling, apprehending suspects, running, and

---

[6] The legal standard for establishing a disabling condition is essentially the same under both FERS and CSRS and thus applicable for purposes of this analysis. *Alford v. Office of Personnel Management*, 111 M.S.P.R. 536, ¶ 10 (2009), *aff'd*, 361 F. App'x 131 (Fed. Cir. 2010).

[7] The record reflects that the light duty assignment was expected to last until the end of the appellant's term appointment. IAF, Tab 6 at 28.

prolonged standing and walking. IAF, Tab 23 at 28. The light duty appears to be an assignment as a dispatcher, one of the four primary duties of the Police Officer position. IAF, Tab 6 at 53-54, Tab 19 at 5, Tab 23 at 20. In contrast to his other duties as a Police Officer, the appellant's position description reflects that the dispatcher duties encompassed only 10% of his total duties. IAF, Tab 6 at 53-54. Furthermore, per the supervisor's statement, the appellant's placement on light duty was because he was "unable to perform the essential functions as a police officer," and placement on light duty would "enable him to be proactive." *Id.* at 28.

Yet, on March 6, 2020, two days after the supervisor statement was signed, the appellant's employing agency asserted that the appellant's condition did not appear to require accommodation, and reassignment was not necessary because his performance was fully successful and there were no medical restrictions keeping him from performing the critical duties of his position.[8] *Id.* at 24-25.

We find that the appellant's placement on light duty merely modified the core functions of his position to where he only performed as a dispatcher and did not perform the other critical or essential duties of his position, such as the full scope of Police Officer duties, defending protection level resources, and base entry controller duties. *Id.* at 53-54. The light duty assignment was, therefore, not an accommodation. *See Bracey v. Office of Personnel Management*, 236 F.3d 1356, 1358, 1360-61 (Fed. Cir. 2001) (finding that Mr. Bracey's light duty assignment could not be considered an accommodation because he was not performing the duties of his official Electronic Worker position, but rather, performing duties of a lower-graded position);[9] *see also Selby*, 102 M.S.P.R. 217, ¶ 16 (stating that when an employee is given a light duty assignment that does not

---

[8] The agency also appeared to erroneously state that the appellant was occupying a permanent position. *Id.* at 25, 43-44. Any such error does not affect the disposition of this matter.

[9] The court extended the rationale of *Bracey* to FERS cases in *Marino v. Office of Personnel Management*, 243 F.3d 1375, 1377 (Fed. Cir. 2001).

enable him to continue performing the critical or essential elements of his official position, *Bracey* compels a finding that he has not been afforded an accommodation disqualifying his entitlement to a disability retirement annuity). Given the numerous physical demands of the Police Officer position and the appellant's limitations due to his numerous medical conditions, we find that accommodation would be unreasonable under the circumstances. *See Balmer v. Office of Personnel Management*, 99 M.S.P.R. 199, ¶¶ 13-14, 17 (2005) (finding that the detailed description of the physical requirements for sorting and delivering mail demonstrated the impracticability of providing accommodation of the appellant's physical disabilities in the Letter Carrier position).

The appellant did not decline a reasonable offer of reassignment to a vacant position.

The administrative judge noted that, based on the appellant's 2020 performance appraisal fully successful rating, there was no requirement or expectation that the appellant qualified for reassignment to a vacant position. ID at 11. There is no evidence in the record to suggest that the appellant was offered or declined such a reassignment. On the contrary, the evidence suggests that the agency made no such reassignment efforts. *See, e.g.*, IAF, Tab 6 at 25 (checking "yes" to the statement, "[r]eassignment is not necessary because employee's performance is fully successful and there are no medical restrictions which keep the employee from performing critical duties or from attending work altogether"). Accordingly, we find that this element is sufficiently satisfied.

Conclusion

For the reasons described herein, we find that the appellant has proven by preponderant evidence his entitlement to disability retirement benefits under FERS.[10]

---

[10] The appellant argues on review that because he was unable to perform the essential duties because of his injuries and he was placed on light duty up until his termination, he was effectively removed for medical inability to perform the essential duties of his position. PFR File, Tab 1 at 8. Thus, he argues, he should receive the presumption of

**ORDER**

We ORDER OPM to grant the appellant's disability retirement application under FERS. OPM must complete this action no later than 20 days after the date of this decision.

We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order. The appellant, if not notified, should ask OPM about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after OPM tells the appellant it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM. *See* 5 C.F.R. § 1201.182(a).

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees

---

entitlement to disability retirement benefits. *Id.*; *see e.g.*, *Harris v. Office of Personnel Management*, 110 M.S.P.R. 249, ¶ 5 (2008) (finding that an appellant's removal for physical inability to perform shifts the burden to OPM to prove the appellant is not entitled to disability retirement benefits). We agree with the administrative judge that this argument is not persuasive. Indeed, the appellant separated from Federal service pursuant to the expiration of his term appointment and not pursuant to a removal for medical or physical inability to perform. ID at 5.

and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b) (9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

*Jennifer Everling*

FOR THE BOARD: _____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.